RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 24a0149p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

           *Plaintiff-Appellee*,

    *v.*

O'BRYAN MITCHELL,

           *Defendant-Appellant*.

No. 23-3588

Appeal from the United States District Court for the Northern District of Ohio at Akron.
No. 5:22-cr-00496-1—John R. Adams, District Judge.

Decided and Filed:  July 10, 2024

Before:  GILMAN, STRANCH, and LARSEN, Circuit Judges.

_____

## COUNSEL

**ON BRIEF:**  Dennis J. Clark, CLARK LAW FIRM PLLC, Detroit, Michigan, for Appellant.
Brenna L. Fasko, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.

_____

## OPINION

_____

RONALD LEE GILMAN, Circuit Judge.  Following an incident in which he fled from police while holding a firearm, O'Bryan Mitchell pleaded guilty to one count of possession of a firearm by a convicted felon. The district court sentenced him to 78 months of imprisonment, concluding that Mitchell's circumstances warranted an upward variance from his Sentencing Guidelines range. It also ordered that Mitchell's sentence would run consecutively to any term of imprisonment arising out of any pending state-court conviction or parole violation. Mitchell

appeals his sentence, arguing that it is both procedurally and substantively unreasonable, and that the district court erred by ordering that he serve his federal sentence consecutive to any pending state sentence. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

In May 2022, the Massillon Police Department responded to a report of a man discharging a firearm near Franklin Park in Massillon, Ohio. When the officers arrived at the scene, they observed a man who matched the description of the suspect. The officers ordered the man to stop, but he disobeyed their orders and fled on foot. This individual was later identified as Mitchell.

As the officers pursued Mitchell, he removed a firearm from his waistband and held it in hand as he ran. Mitchell looked in the officers' direction twice during the pursuit. But after slipping and falling on wet grass, Mitchell threw the firearm into nearby bushes. Mitchell continued running but eventually fell again and, soon after, the officers arrested him.

The officers then searched Mitchell and discovered that he was in possession of a digital scale and a plastic bag containing methamphetamine. After surveying the area where the officers chased Mitchell, the officers recovered the firearm that Mitchell had thrown into the bushes. The firearm was loaded, and the DNA collected on it matched Mitchell's.

Mitchell was subsequently indicted on one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). He initially pleaded not guilty, but later changed his plea after a change-of-plea hearing. The parties did not enter into a plea agreement, so Mitchell pleaded guilty pursuant to the indictment.

After applying an acceptance-of-responsibility reduction, the presentence report calculated Mitchell's final adjusted offense level as 17, and his criminal-history category as VI. Based on Mitchell's offense level and criminal-history category, the Sentencing Guidelines recommended 51 to 63 months of imprisonment. The presentence report did not identify any factors that would warrant a departure from the Guidelines.

But the presentence report identified grounds that could support either an upward or a downward variance. It noted the following factors that could support an upward variance: Mitchell's flight from law enforcement, his possession of methamphetamine, and the potential discharge of a firearm before the officers arrived at the park. In support of a downward variance, the presentence report pointed to Mitchell's mental-health struggles and his exposure to a "gang lifestyle" at a young age.

The presentence report also highlighted statistics concerning defendants who were sentenced from 2017 to 2021 with the same offense level and criminal-history category as Mitchell. Specifically, it noted that for those defendants, the average length of imprisonment was 52 months, and the median length of imprisonment was 51 months. Mitchell did not object to the presentence report, including its conclusions and calculations.

Before sentencing, the district court issued an order indicating that it might vary upwards from the Sentencing Guidelines range. In support of this potential variance, the court highlighted the nature and circumstances of Mitchell's offense, his criminal history, the seriousness of Mitchell's offense, and the need to protect the public.

The district court conducted two sentencing hearings, the first of which occurred in June 2023. Neither party objected to the presentence report during the hearing. The court then announced its Guidelines calculation, which coincided with that of the presentence report.

Relevant to this appeal, Mitchell took "full responsibility" for his actions and stated that he needed "rehabilitation," while acknowledging the alleged role that drugs played in his conduct. But the district court was not persuaded that Mitchell's mitigation evidence warranted deviating downward.

The district court ultimately ordered a continuance in order to investigate certain facts about two of Mitchell's prior convictions. It also directed U.S. Probation Services to gather information about whether state parole authorities planned to impose further sanctions on Mitchell.

In July 2023, the district court conducted the second sentencing hearing.  The court listened to the parties' final arguments, and it then analyzed the 18 U.S.C. § 3553(a) factors.  It described Mitchell's criminal history, the nature and circumstances of the offense for which he was convicted, Mitchell's personal characteristics, and the type of sentences usually imposed for the crime to which Mitchell had pleaded guilty.  Based on these factors, the court highlighted the need to impose "a lengthy period of incarceration" and for "adequate deterrence [and] to protect the public."

The court also acknowledged potential mitigating factors, including Mitchell's exposure to domestic violence, gang activity, and substance abuse.  But the court downplayed these mitigating factors by noting that Mitchell's "criminal record began at the age of 15," and "despite numerous opportunities to amend his behavior by supervision and incarceration . . . [,] [h]e's not done so."  And with respect to Mitchell's mental-health struggles, the court recognized "mental health issues and substance abuse issues," but concluded that Mitchell had failed to utilize resources available to him that were designed to address these issues.

After concluding that Mitchell was an "extremely dangerous individual" who "poses a risk to the safety of all," the district court imposed an upward variance of two offense levels.  It justified the variance for several reasons, including Mitchell's possession of narcotics during his arrest, his criminal history, juvenile-crime record, poor institutional adjustment to incarceration, failure to modify his behavior via noncustodial sanctions, and repeated violations of supervised release.  The court then sentenced Mitchell to 78 months in prison and a three-year term of supervised release.

Finally, the district court ordered that "this [federal] time [of imprisonment] will be consecutive to whatever time is imposed by the [state] parole authorities or any other court related to his state court [convictions]."  Mitchell did not raise any objections during the sentencing hearing under this court's decision in *United States v. Bostic*, 371 F.3d 865 (6th Cir. 2004).

## II.  ANALYSIS

Mitchell first asserts that the district court's sentence was substantively unreasonable. But as the government correctly points out, some of Mitchell's purported substantive-reasonableness arguments actually attack the procedural reasonableness of his sentence. We will therefore begin by addressing Mitchell's procedural-reasonableness arguments before analyzing his substantive-reasonableness ones.  *See United States v. Thomas-Mathews*, 81 F.4th 530, 541 (6th Cir. 2023) ("[W]e typically first address the procedural reasonableness of a sentence and do not analyze its substantive reasonableness unless the sentence is procedurally sound." (internal quotation marks omitted) (quoting *United States v. Adams*, 873 F.3d 512, 520 (6th Cir. 2017)). Afterward, we will analyze his argument that the district court erred by imposing a sentence that runs consecutively to any state-imposed sentence.

### A.  Mitchell's sentence was procedurally reasonable

For a sentence to be procedurally reasonable, a court "must properly calculate the guidelines range, treat that range as advisory, consider the sentencing factors in 18 U.S.C. § 3553(a), refrain from considering impermissible factors, select the sentence based on facts that are not clearly erroneous, and adequately explain why it chose the sentence."  *United States v. Miller*, 73 F.4th 427, 429–30 (6th Cir. 2023) (quoting *United States v. Rayyan*, 885 F.3d 436, 440 (6th Cir. 2018)).  Because Mitchell did not raise any procedural objections to his sentence in the district court, his procedural-reasonableness claims are reviewed under the plain-error standard.  *See United States v. Wallace*, 597 F.3d 794, 802 (6th Cir. 2010) ("Where a party has failed to object to a procedural defect, we review claims of procedural unreasonableness for plain error.").

#### 1. The district court was not predisposed to a sentence above the Guidelines

Mitchell contends that the district court imposed an arbitrary sentence because it "seemed predisposed to an above guidelines sentence."  He specifically points to the following statement at his change-of-plea hearing, in which the court warned Mitchell:

> The marshals will notify me if there's any problems with contraband, drugs, cell phones, fighting.  Any of those things will most assuredly put you at pretty close

to the ten-year mark based on what I see in this case.  So, I don't know that yet.  It will remain to be seen.  But any type of conduct like that will certainly lengthen your sentence, so stay out of trouble.

Mitchell asserts that because these comments were made before the preparation of the presentence report, the comments were "indicative of a predisposition to render a very high sentence, bearing in mind that the maximum statutory penalty is ten years," and that the court "seems to have prematurely decided that Mitchell's sentence will be 'pretty close' to the maximum."  He also adds that "misconduct while in jail awaiting sentence . . . is not of much consequence in sentencing determinations, [so] this commentary is actually more of a message of what the District Court is predisposed to do."

As an initial matter, Mitchell frames this argument as a substantive-reasonableness challenge.  He reasons that a court's improper predisposition toward a defendant is indicative of an arbitrary sentence.  *See United States v. Gardner*, 32 F.4th 504, 530 (6th Cir. 2022) (observing that when a district court chooses a sentence arbitrarily, the question is one of substantive reasonableness).  But this argument is better framed as a court "considering [an] impermissible factor," *see Miller*, 73 F.4th at 430 (quoting *Rayyan*, 885 F.3d at 440), which in this case would be the court's alleged bias or personal beliefs about Mitchell.  And despite conflicting cases in this circuit, this court has recently clarified that this sort of challenge is procedural in nature.  *United States v. Parrish*, 915 F.3d 1043, 1047–48 (6th Cir. 2019) ("[I]t was unsettled in this circuit whether a district court's consideration of an impermissible factor should be treated as procedural or substantive error.  But in 2016, the court settled the question, concluding that 'consideration of an impermissible factor is more properly considered a procedural, not substantive, error.'" (quoting *United States v. Cabrera*, 811 F.3d 801, 809 (6th Cir. 2016)) (internal citations omitted)).

Mitchell's argument nevertheless fails under the plain-error standard.  After stating that any "problems" caused by Mitchell while detained would likely result in a sentence close to the statutory maximum, the district court qualified its warning by saying "I don't know that yet.  It will remain to be seen."  Importantly, "[n]othing in the record suggests that the district court *based* its sentence on" these remarks.  *See United States v. Hymes*, 19 F.4th 928, 934 (6th Cir. 2021) (emphasis in original).  Mitchell, moreover, has not directed us to any caselaw addressing

a court's qualified impression about a defendant's sentence prior to the preparation of a presentence report. We are likewise unaware of any cases addressing this question. His argument on this point is therefore unpersuasive.

Mitchell relatedly asserts that the district court was predisposed to impose a higher sentence because "misconduct while in jail awaiting sentence . . . is not of much consequence in sentencing determinations." To the contrary, "pretrial conduct . . . is an appropriate consideration 'under § 3553(a) because it is relevant to the history and characteristics of the defendant, and to the need for the sentence to promote respect for the law.'" *United States v. Freeman*, 2023 U.S. App. LEXIS 33518, at *5–6 (6th Cir. Dec. 18, 2023) (order) (quoting *United States v. Schlosser*, 558 F.3d 736, 742 (8th Cir. 2009)). The court therefore did not plainly err by stating that it would consider Mitchell's pretrial conduct during sentencing.

### 2. The district court adequately explained why a two-level upward variance was imposed

Mitchell next argues that the district court provided an "insufficient explanation for why the sentencing guidelines did not adequately account for the factors for which the two level upward variance was assessed." Although fashioned as a substantive-reasonableness challenge, this challenge is procedural in nature because Mitchell is arguing that the court did not "adequately explain why it chose the sentence." *See Miller*, 73 F.4th at 430; *see also United States v. Zabel*, 35 F.4th 493, 505 (6th Cir. 2022) (involving a case in which the defendant argued "that the district court committed procedural error by not adequately explaining why it imposed an . . . above-guidelines sentence").

"When imposing a procedurally reasonable sentence, the district court must 'adequately explain the chosen sentence—including an explanation for *any deviation* from the Guidelines range.'" *United States v. Johnson*, 640 F.3d 195, 205 (6th Cir. 2011) (emphasis in original) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). "First, a district court must explain the reasons justifying a departure, and, second, evidence of those reasons must appear in the record. Such explanation allows meaningful appellate review." *Id.* (quoting *United States v. Smith*, 474 F.3d 888, 894 (6th Cir. 2007), *abrogated on other grounds by Gall*, 552 U.S. at 51). And "if the sentence imposed is outside the advisory range, [then] the court is required to state 'the specific

reason for the imposition of' its departure or variance." *United States v. Zobel*, 696 F.3d 558, 566 (6th Cir. 2012) (quoting 18 U.S.C. § 3553(c)(2)).

In the present case, the district court adequately explained its rationale for varying upwards after thoroughly analyzing the 18 U.S.C. § 3553(a) factors. It specifically justified the upward variance based on Mitchell's possession of narcotics during his arrest, his criminal history, juvenile-crime record, poor institutional adjustment to incarceration, repeated violations of supervised release, and failure to modify his behavior via noncustodial sanctions, including his refusal to comply with orders of community service and substance-abuse treatment. Also mentioned by the court in support of the upward variance was the need for "adequate deterrence, [and to] protect the public." The court therefore provided several specific reasons for its upward variance and considered, among other factors, the nature and circumstances of the original offense, Mitchell's history and characteristics, protecting the public, and the need for deterrence.

Mitchell nevertheless argues that the district court's reason for an upward variance was based only on its "subjective opinion." But that assertion is belied by the extensive explanation we have just recounted from the court's sentencing hearing. Mitchell relatedly contends that there was an insufficient explanation for "why the upward assessment was for two levels and why the sentence was at the highest point of that increased range." He fails to identify, however, any caselaw requiring a district court to explain why it rejected other possible sentences when varying upward.

This court has "never required the district court to articulate every possible reason why a sentence is procedurally reasonable." *United States v. Jackson*, No. 22-3288, 2023 WL 3059078, at *3 (6th Cir. Apr. 24, 2023); *see also United States v. Wallace*, 597 F.3d 794, 804 (6th Cir. 2010) ("[A] district judge need not give the reasons for rejecting any and all arguments by the parties for alternative sentences." (citation and internal quotation marks omitted)). District courts must instead explain their "reasoning to a sufficient degree to allow for meaningful appellate review—the touchstone of procedural reasonableness." *Zobel*, 696 F.3d at 569 (citation and internal quotation marks omitted). As we have discussed, the court's reasons for why it varied upward were sufficiently explained.

### 3. *The district court did not ignore mitigating factors*

Mitchell also asserts that the district court failed to fully consider the mitigating factors identified in the presentence report. He specifically argues that "his mental health problems [were] dismissed by the District Court" and that his substance abuse struggles "were [not] really taken into consideration as mitigation when the sentence was fashioned."

We disagree. The record shows that the district court considered both of the mitigating factors that Mitchell has identified. As for Mitchell's mental-health struggles, the district court explained that it would place less weight on that factor because, despite his mental-health struggles, Mitchell "understand[s] right from wrong. You understand you're not to have a gun."

Mitchell's other contention that the district court disregarded his substance-abuse problems is similarly unpersuasive. The court acknowledged Mitchell's history of substance abuse, noting that "[a]n addiction, I can understand. Trouble with alcohol, trouble with drug use, those things are problematic." But the court then explained that despite these concerns about substance abuse, the nature of Mitchell's repeated offenses left the court "wonder[ing] if 51 to 63 months is sufficient but not greater than necessary when I have someone who continues to possess firearms." So "[c]ontrary to [Mitchell's] argument, the record demonstrates that the district court did adequately consider" his relevant mitigating factors. *See United States v. Houston*, 529 F.3d 743, 754 (6th Cir. 2008). We therefore conclude that the district court did not plainly err in this respect.

### 4. *The district court did not vary upward because it blamed Mitchell for Ohio's crime rate*

Mitchell next argues that the district court erred by relying on an impermissible factor: its alleged personal-value judgment that Mitchell was part of Ohio's crime problem. He points to the court's statement that "continuing to possess a loaded gun in the community is what's causing the problems we have in Akron, Cleveland, Youngstown, Massillon[,] everywhere."

Contrary to Mitchell's contention, however, we do not find that the district court plainly erred by referencing Ohio's crime issues. To begin with, the court did not expressly rely on the statement as a reason to impose an upward variance. *See United States v. Hymes*, 19 F.4th 928,

934 (6th Cir. 2021) (discounting concerns about a district court's allegedly improper statement because the court did not rely on it as a basis for the sentence).  The statement was made after the defendant addressed the court, so in context, the court appears to have made the statement to underscore the seriousness of Mitchell's actions.  Such consideration is a sentencing factor that a court can correctly consider.  *See* 18 U.S.C. § 3553(a)(2)(A).

Mitchell, moreover, does not identify any caselaw that forbids a district court from discussing how a defendant's actions contribute to a state's crime rate.  If this was the main reason for imposing an upward variance, Mitchell's argument would be more persuasive.  *See United States v. Brown*, 828 F. App'x 256, 259 (6th Cir. 2020) (vacating a sentence because the only basis for an upward variance was based on "a problem common to all defendants" with the same criminal-history score).  But as we have discussed, there were several reasons identified by the court that justified an upward variance.  We therefore conclude that this statement does not warrant resentencing under the plain-error standard.

## B.  Mitchell's sentence was substantively reasonable

Mitchell next challenges his sentence as substantively unreasonable.  He principally makes two arguments in this regard.  His first argument is that the district court erred by "giving [his criminal history] undue weight and varying upward based on it."  Mitchell's second substantive-reasonableness argument is that because the court's sentence "exceeded by 26 months the national average for [Mitchell's] offense of conviction," it was too long and failed to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct.

"Substantive reasonableness focuses on whether a 'sentence is too long (if a defendant appeals) or too short (if the government appeals).'"  *United States v. Parrish*, 915 F.3d 1043, 1047 (6th Cir. 2019) (quoting *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018)).  "The point is not that the district court failed to consider a factor or considered an inappropriate factor; that's the job of procedural unreasonableness.  It's a complaint that the court placed too much weight on some of the § 3553(a) factors and too little on others in sentencing the individual." *Rayyan*, 885 F.3d at 442.  A "district court's decision to assign more or less weight to a given

factor is 'a matter of reasoned discretion, not math, and our highly deferential review of a district court's sentencing decisions reflects as much.'" *United States v. Boucher*, 937 F.3d 702, 707 (6th Cir. 2019) (quoting *Rayyan*, 885 F.3d at 442).

"Although a sentence that falls within the Guidelines range warrants a presumption of reasonableness in this circuit, there is no presumption against a sentence that falls outside of this range." *United States v. Tristan-Madrigal*, 601 F.3d 629, 633 (6th Cir. 2010) (quoting *United States v. Herrera-Zuniga*, 571 F.3d 568, 590 (6th Cir. 2009)).  For outside-of-the-range sentences, we "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Boucher*, 937 F.3d at 708 (quoting *Gall*, 552 U.S. at 50).  "[W]e may consider the percentage of variance from the specified Guidelines range or the number of months of the sentence." *United States v. Perez-Rodriguez*, 960 F.3d 748, 755 (6th Cir. 2020).

In the present case, the district court sentenced Mitchell to 78 months of imprisonment, a 24% increase from the high-end (63 months) of Mitchell's Guidelines range.  Mitchell argues that this sentence erroneously (1) gave undue weight to his criminal history, and (2) failed to avoid sentencing disparities among similarly situated defendants.

We first turn to Mitchell's argument that the district court placed undue weight on his criminal history.  To support this argument, Mitchell relies on this court's decision in *United States v. Boucher*, 937 F.3d at 711, which noted that a defendant's criminal record "is usually not a proper reason for a variance precisely because the Guidelines already take it into account."  But as relevant here, this court's precedent also "permits juvenile offenses to be considered in sentencing, whether in the context of an upward departure or, analogously, an upward variance." *United States v. Horton*, 638 F. App'x 469, 472 (6th Cir. 2016).  The district court partly based its justification for an upward variance by highlighting Mitchell's juvenile record, which the presentence report did not consider when calculating his criminal-history category. *See United States v. Barber*, 200 F.3d 908, 912–13 (6th Cir. 2000) ("U.S.S.G. § 4A1.3 authorizes the Court to consider . . . prior sentences not used in computing the criminal history category." (cleaned up)).

Further undermining Mitchell's argument is that the district court did not rely solely on his criminal record when it chose to impose the upward variance. The court, for instance, also emphasized Mitchell's poor institutional adjustment to prior terms of incarceration, a factor that was not accounted for in Mitchell's criminal-history category. Mitchell's poor institutional adjustment served as a basis for the court's conclusion that he "need[ed] to be deterred." *See* § 3553(a)(2)(B). The court further observed that Mitchell had been given several opportunities to modify his behavior "by way of judicial release and other noncustodial sanctions," but repeatedly violated his supervised release anyway.

Mitchell also asserts that the district court failed to avoid an unwarranted sentencing disparity. He observes that the court sentenced him to 78 months of imprisonment, whereas the average length of imprisonment for defendants with his offense level and criminal-history category is only 52 months.

"[T]he need to avoid unwarranted sentencing disparities sits at the heart of our substantive reasonableness review." *United States v. Lightning*, 835 F. App'x 38, 43 (6th Cir. 2020). "To avoid sentence disparities, the Guidelines provide a transparent and predictable sentencing range for defendants who fall within the 'heartland' of average cases." *Boucher*, 937 F.3d at 708 (quoting *Kimbrough v. United States*, 552 U.S. 85, 109 (2007)). "When a district court varies outside the guideline range, then, we expect the court to explain what distinguishes that defendant's case from a typical one." *Id.* To that end, we must determine what distinguishes Mitchell's case from a typical one.

We first note that Mitchell's possession of narcotics and his prior firearms offense might alone have been insufficiently distinguishable. *See United States v. Burkey*, No. 22-3076, 2023 WL 652812, at *5 (6th Cir. Jan. 27, 2023) (observing that "most firearms offenders have at least one prior conviction for a violent offense . . . , federal firearms offenders in general are the most likely to recidivate, . . . and a connection to drugs is not irregular in firearm possession cases") (citations and internal quotation marks omitted). Since "a characteristic shared by 60% to 70% of offenders cannot remove [a defendant's] case from the heartland" of typical cases, the "circumstances [here] appear unexceptional." *Id.* (quoting *United States v. Sims*, 800 F. App'x 383, 390 (6th Cir. 2020) (Stranch, J., dissenting)).

But "Mitchell's prison disciplinary record removes this case from the" run-of the-mill firearms-possession case. *See id.* As we have discussed previously, the court spent a considerable portion of the sentencing hearing discussing Mitchell's poor institutional adjustment, which is relevant because "[t]he Guidelines do not directly encompass [Mitchell's] past conduct in prison." *See id.* And the court similarly considered Mitchell's juvenile-crime record and violations of judicial-release conditions, which were also unaccounted for in the Guidelines. The court therefore concluded that an upward variance was necessary for "adequate deterrence" and to "protect the public." In sum, several reasons support the district court's decision to vary upward. *See Sims*, 800 F. App'x at 386.

This case is also distinguishable from other cases in which this court has found a sentence to be substantively unreasonable. In *United States v. Warren*, 771 F. App'x 637, 643 (6th Cir. 2016), for example, this court held that a sentence was substantively unreasonable because the district court doubled the maximum recommended sentence based solely on the defendant's criminal record. *See also United States v. Brown*, 828 F. App'x 256, 260–62 (6th Cir. 2016) (holding a sentence substantively unreasonable for virtually the same reasons as in *Warren*).

Here, by contrast, the district court varied upward by a more modest 24% from the high end of the Guidelines range. *See United States v. Perez-Rodriguez*, 960 F.3d 748, 755 (6th Cir. 2020) ("[W]e may consider the percentage of variance from the specified Guidelines range or the number of months of the sentence."). This is not to say that a similar variance might not be substantively unreasonable in other circumstances. *See id.* at 756 (acknowledging that "sentences must be fashioned on an individual basis"). But because the court considered various other factors not accounted for in the Guidelines (as well as discussing each 18 U.S.C. § 3553(a) factor) in fashioning a relatively modest upward variance, we are satisfied that it had "sufficiently compelling" justifications for the upward variance. *See id.* at 757.

**C. The district court did not plainly err by ordering Mitchell's federal sentence to run consecutively to any state sentence**

Mitchell finally argues that the district court erred by ordering that his sentence run consecutively to any term of imprisonment arising out of any state-court conviction or parole violation. He maintains that the court failed to (1) identify any pending state sentence or parole

violation, (2) discuss the § 3553(a) factors with respect to ordering that his sentence run consecutively, and (3) acknowledge the relevant guidance in the Sentencing Guidelines. Because Mitchell did not object to the court's imposition of a consecutive sentence, we review his claim under the plain-error standard. *See United States v. Potts*, 947 F.3d 357, 364 (6th Cir. 2020).

### 1. The district court did not need to identify any pending state sentence

According to Mitchell, the district court erred in ordering his sentence to run consecutively to any term of imprisonment arising out of a state-court conviction or parole violation because "there was no specific evidence identified of a preexisting or pending state sentence or parole violation involving imprisonment 'time.'" He therefore argues that the district court needed to (1) identify a specific sentence or parole violation, or (2) acknowledge that an indeterminate sentence is pending.

Mitchell's argument, however, has already been rejected by this court in *United States v. Fox*, No. 20, 2021 WL 3747190, at *4 (6th Cir. Aug. 25, 2021). In *Fox*, the defendant had been released from state prison and had no further sentence unless he violated parole. He "argue[d] on appeal that since the state had not charged him with a parole violation, there was no undischarged term of imprisonment, and that the district court erred in ordering his federal sentence to run consecutively to a non-existent sentence." *Id.* (internal quotation marks omitted). But this court rejected that argument, noting that "District Courts have discretion to impose sentences that run consecutively or concurrently to any 'undischarged term of imprisonment' pursuant to 18 U.S.C. § 3584 and U.S.S.G. § 5G1.3(d)." *Id.* (citation omitted).

So too here. Like the defendant in *Fox*, Mitchell was released from state prison but was still "under a criminal justice sentence" that could have resulted in his return to prison if he violated certain conditions while released. That the court failed to identify "specific evidence . . . of a preexisting or pending state sentence" is not plainly erroneous for the reasons explained in *Fox*. The court therefore did not commit plain error by failing to identify any pending state sentences.

***2.  The district court did not plainly err by failing to explicitly discuss the
18 U.S.C. § 3553(a) sentencing factors when imposing a consecutive
sentence***

"When a defendant is serving an undischarged prior sentence, the district court may impose a consecutive or concurrent sentence.  The court must consider the factors listed in 18 U.S.C. § 3553(a) in making this determination.  Furthermore, the court should also consider the relevant Guidelines recommendations and policy statements."  *United States v. Berry*, 565 F.3d 332, 342 (6th Cir. 2009) (internal citations omitted).

Mitchell contends that the district court erred because there was not "any discussion of how [the] §3553(a) [factors] related to the consecutive [sentence] finding."  He also maintains that the court failed to make "reference, expressly or implicitly, to the relevant guideline, § 5G1.3 or its Application Note Guidance."

We first address Mitchell's argument concerning the district court's allegedly inadequate explanation of the § 3553(a) factors as they relate to his consecutive sentence.  As we have previously explained, the district court thoroughly analyzed the § 3553(a) factors with respect to the sentence's length. And when a court does so, it need not conduct a separate § 3553(a) analysis when deciding whether to impose a consecutive sentence.  *See Berry*, 565 F.3d at 343 ("Requiring district courts to conduct a separate Section 3553(a) analysis for the concurrent or consecutive nature of the sentence would be repetitious and unwarranted.").  The court must instead "make[] *generally clear* the rationale under which it has imposed the consecutive sentence."  *United States v. Johnson*, 640 F.3d 195, 209 (6th Cir. 2011) (emphasis in original) (quoting *United States v. Owens*, 159 F.3d 221, 230 (6th Cir. 1998)).

In this case, the district court made its rationale clear.  Before imposing a consecutive sentence, the court noted that "since [Mitchell] had three separate cases of supervision for which he was under supervision, this time will be consecutive and not concurrent with any time the [state] parole authorities may deem appropriate."  The court therefore acknowledged the "indeterminate nature, as well as the separate nature of the state and federal offenses," *see Berry*, 565 F.3d at 343, when considering whether a consecutive sentence was appropriate.  A similarly brief explanation was provided by the district court in *Berry*, and this court held that the

explanation was sufficient because of the prior extensive analysis of the § 3553(a) factors.  *Id.* (finding no error where the only explicit reference justifying a consecutive sentence was that the "[s]entences are to be served concurrently with respect to each other, but the court in the exercise of its discretion direct[s] that they be served consecutive to [the state sentence]").  We are therefore persuaded that the district court's brief explanation is adequate under the plain-error standard.

Mitchell relatedly argues that the district court erred by not explicitly discussing Application Note 4(A) of § 5G1.3.  This Application Note "articulates factors [that] sentencing courts should consider before deciding whether to run state and federal sentences consecutively." *United States v. Potts*, 947 F.3d 357, 369 (6th Cir. 2020).  These factors include

> (1) the § 3553(a) factors; (2) the type and length of the prior undischarged sentence; (3) the time served and likely to be served on the undischarged sentence; (4) the procedural posture of the undischarged sentence (whether it was imposed in state or federal court and when it was imposed); and (5) any other relevant circumstance.

*Id.*

Mitchell maintains that the district court failed to heed these factors. Undermining his position, however, is this court's decision in *United States v. Potts*, 947 F.3d 357 (6th Cir. 2020). In that case, this court explained that "we have previously addressed whether a § 5G1.3 analysis requires a district court to engage in a separate recitation of the Guidelines provision or its underlying considerations.  And we have not imposed such a requirement."  *Id.*  at 369.  "Instead, reviewing the totality of the record, we ask whether the district court, in imposing consecutive sentences, followed the rationale provided in Application Note 4(A)."  *Id.* (citation and internal quotation marks omitted).  "So long as [the] rationale is generally clear, either in a statement by the district court or by reference to the [presentence report], the district court does not abuse its discretion (let alone commit plain error)."  *Id.* (citation and internal quotation marks omitted).

"[T]he totality of the record" in the present case demonstrates that the district court followed the rationale provided in Application Note 4(A). *See id.*  True enough, the court did not explicitly reference § 5G1.3 or Application Note 4.  But under *Potts*, although preferred, this was not required.  The court instead "engaged in an extensive discussion of the § 3553(a) factors

before fashioning its sentence, [one of the] consideration[s] in § 5G1.3 Application Note 4(A)." *See id.* It also referenced the presentence report's acknowledgment of Mitchell's "three separate cases" for which he was currently under "criminal justice sentence[s]."

The "numerous violations of supervised conditions" that Mitchell had previously committed indicated to the district court that he might again have his supervision revoked, which fostered uncertainty about Mitchell's future state imprisonment. That uncertainty appears to be why the court ordered the time to be consecutive to "whatever time is imposed by parole authorities or any other court related to his state court [convictions]." "[T]hese considerations are sufficient to support the decision to impose a consecutive sentence." *Potts*, 947 F.3d at 370. We therefore conclude that the district court did not plainly err in this regard.

## III.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.