NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0501n.06

Case No. 24-5947

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Oct 28, 2025
KELLY L. STEPHENS, Clerk

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

CLINTON LEE SCOTT,

    Defendant - Appellant.

)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF
TENNESSEE

OPINION

Before: GIBBONS, McKEAGUE, and RITZ, Circuit Judges.

**RITZ, Circuit Judge.** Clinton Scott pled guilty to conspiring to distribute methamphetamine. At the time he conspired to distribute the drugs, he was on probation for one Georgia state conviction and serving a prison sentence for another Georgia state conviction. The district court sentenced Scott to the statutory maximum of 240 months' imprisonment, ordering that his federal sentence run consecutively to any probation revocation sentence imposed by the state of Georgia. Scott appealed, arguing that his sentence is procedurally unreasonable because the district court inadequately considered and explained the sentencing factors under 18 U.S.C. § 3553(a). Scott also claims that the district court erroneously ran his federal sentence consecutively to any anticipated state sentence and failed to explain its reasons for doing so. Because Scott has not demonstrated that his sentence is procedurally unreasonable or that the district court plainly erred in ordering the sentences to run consecutively, we affirm.

**BACKGROUND**

Clinton Scott was an inmate in the Riverbend State Prison in Milledgeville, Georgia. While incarcerated, he conspired with others to distribute methamphetamine in Tennessee by accepting payments for drugs and coordinating deliveries with people who were outside the prison. Scott was indicted for a federal drug crime in November 2022 and was transferred from the Georgia state prison to federal custody in December 2022. He ultimately pled guilty to conspiring to distribute actual methamphetamine in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(C).

Scott's presentence report recommended that the district court attribute at least 4.5 kilograms of actual methamphetamine to him, resulting in a base offense level of 38 under the United States Sentencing Guidelines. The report also recommended a four-level "aggravating role" enhancement for Scott's leadership of the conspiracy under U.S.S.G. §3B1.1(a), as well as a three-level reduction for acceptance of responsibility. The recommended total offense level, then, was 39.

Scott's prior convictions resulted in a criminal history score of 27 and a criminal history category of VI. These prior convictions included the two most recent offenses with which he was charged before the federal case: (1) a case in Dade County, Georgia, in which Scott pled guilty to various crimes including possession of criminal tools, methamphetamine, and drug-related paraphernalia; criminal attempt; criminal trespass; and giving false information to a law enforcement officer; and (2) a case in Whitfield County, Georgia, in which Scott pled guilty to possession of methamphetamine and theft by deception.

Scott was released from prison in the Dade County case in August 2021, but his probation was revoked for failure to comply with various conditions of probation, and he was sentenced to 45 days in jail in November 2021. He was to remain on active supervision for the remainder of

that sentence. On December 27, 2021, however, the Dade County court issued a violation-of-probation warrant (presumably because Scott had been arrested in the Whitfield County case six days earlier). Scott was serving the sentence in the Whitfield County case while committing the federal methamphetamine offense. When Scott's sentence in the Whitfield County case expired on December 19, 2022, he was taken into federal custody on the following day.

The presentence report calculated that, based on a total offense level of 39 and a criminal history category of VI, the guidelines imprisonment range was 360 months to life imprisonment. Because the maximum term of imprisonment under 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) was 20 years, however, the guidelines range was 240 months. *See* U.S.S.G. §5G1.1(a). Finally, the presentence report noted,

> Pursuant to USSG §5G1.3(a), if the instant offense was committed while the defendant was serving a term of imprisonment (including work release, furlough, or escape status) or after sentencing for, but before commencing service of, such term of imprisonment, the sentence for the instant offense shall be imposed to run consecutively to the undischarged term of imprisonment.

RE 532, Presentence Rep., PageID 3606.

At the sentencing hearing, the district court first confirmed that Scott had no objections to the presentence report's contents, other than an objection to the leadership enhancement, which Scott's counsel agreed at the hearing would not ultimately affect the guidelines range. The court noted that it was "required . . . to determine the guideline range that applies," and announced that it would not address the leadership-role enhancement because "it will have no effect at all on the Court's calculation of the guideline range." RE 546, Sent. Hr'g Tr., PageID 3726. The court continued: "That means . . . that the Court has determined that the presentence report is correct factually, that the . . . guideline range is correct." *Id.* The government and defense both agreed that the court had correctly stated the restricted guidelines range of 240 months. The court went

on to state that this guidelines range was "merely advisory" and "not binding on the [c]ourt," but noted that it "must consult the guidelines and . . . take them into account, as well as the sentencing factors listed in 18 U.S.C. [§] 3553, in arriving at an appropriate sentence." *Id.* at PageID 3727.

The court then heard argument from both sides. Scott requested "leniency," emphasizing his background and difficult childhood, the lack of violent crimes in his criminal history, and his drug addiction. *Id.* at PageID 3727-28. For its part, the government focused on the effect of Scott's offenses on the community and argued that a sentence in the restricted guidelines range would "reflect the seriousness of the offense[,] promote respect for the law[,] provide just punishment for the offense, and also afford . . . deterrence to criminal conduct." *Id.* at PageID 3729-30.

In pronouncing the sentence, the district court stated:

THE COURT: [T]he fundamental principle of the guidelines is that we try to combine two things; we try to combine the crime that was committed along with the person. And the person includes their background and their upbringing, the chances they've had in life, their education or lack of education, and also their criminal past. And then we try to combine that with the crime that was committed.

Crimes are similar, but all the people are unique. There is no other [Clinton] Lee Scott on this earth and there will not never be another Clinton Lee Scott on this earth. So you're unique. There is not going to be another one of you. And one of the things that I think you've come to learn is that life only goes in one direction . . . . And a lot of our past stays with us. And we have to account for our past. At some point, though, our past has to be our past. Our past doesn't have to be our present and it sure should not be our future.

As [defense counsel] said, you have a very troubling and troubled past. And while you're in jail, I strongly urge you to do as much as you can to put that past behind you so that when you do get out of jail—and you're still going to be, you know, relatively young when you get out—you can start life afresh and you can be a credit to yourself and a credit to your family and a credit to your community.

The Court having considered the nature and circumstances of this offense, the history and characteristics of Mr. Scott, the advisory guideline range, as well as the other 3553 factors, and the fact that there is a statutory mandatory minimum here - - I'm sorry, a statutory maximum here, the Court orders the defendant be committed to the custody of the Bureau of Prisons to be imprisoned for a term of 240 months,

which is the statutory maximum, but it is below the guidelines sentence that the guidelines would indicate would be appropriate.

The Court also orders this sentence to run consecutive to any revocation sentence that might be imposed in defendant's pending Dade County, Georgia, case in the Superior Court there in Docket Number 20-CR-00057.

RE 546, Sent. Hr'g Tr., PageID 3730-31. Scott filed this timely appeal.

## ANALYSIS

Scott challenges the district court's imposition of the statutory maximum sentence as well as the court's order that his sentence run consecutively to any sentence imposed related to the revocation of his probation in Georgia. Both arguments fail.

### I. The district court adequately considered and explained the § 3553(a) factors.

"Sentences in criminal cases are reviewed for both procedural and substantive reasonableness." *United States v. Morgan*, 687 F.3d 688, 693 (6th Cir. 2012). The procedural component requires that we "ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *Gall v. United States*, 552 U.S. 38, 51 (2007). The § 3553(a) factors require that a district court consider "(1) offense and offender characteristics; (2) . . . 'just punishment' . . . deterrence . . . incapacitation, [and] rehabilitation; (3) the sentences legally available; (4) the Sentencing Guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid unwarranted disparities; and (7) the need for restitution." *Rita v. United States*, 551 U.S. 338, 347-48 (2007).

Scott argues his sentence is procedurally unreasonable because the district court inadequately considered the sentencing factors under § 3553(a) and inadequately explained its decision to impose the statutory maximum sentence of 240 months. Ordinarily, we review

sentences under a "deferential abuse-of-discretion standard." *Gall*, 552 U.S. at 41. Because Scott failed to object on these procedural grounds before the district court, however, we review his sentence for plain error. *See United States v. Inman*, 666 F.3d 1001, 1003 (6th Cir. 2012) (per curiam). Under plain-error review, Scott must establish: (1) the district court committed an error; (2) the error was obvious or clear; (3) the error affected his substantial rights; and (4) the error affected the fairness, integrity, or public reputation of his judicial proceedings. *Id.* at 1003-04. We have found plain error only in "exceptional circumstances." *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc) (internal quotation marks omitted).

Scott first argues that the district court inadequately considered the § 3553(a) factors because it considered only his background and the need to provide him with correctional treatment or training. But the district court's explanation of the § 3553(a) factors, although brief, was legally sufficient. The Supreme Court has explained that the sentencing judge has an obligation to "set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Rita*, 551 U.S. at 356. And where the arguments at the sentencing hearing are "conceptually simple," a "brief" statement of reasons can be "legally sufficient." *Id.* As we have put it, the key "question is whether the record makes clear that the sentencing judge listened to each argument, considered the supporting evidence, was fully aware of the defendant's circumstances and took them into account in sentencing him." *Vonner*, 516 F.3d at 387 (quoting *Rita*, 551 U.S. at 358 (internal quotation marks omitted)).

Here, the main argument that Scott made at sentencing was a request for "leniency" in light of his background, his drug addiction, the lack of violent crimes in his criminal history, and his acceptance of responsibility. RE 546, Sent. Hr'g Tr., PageID 3727-28. And the district court

responded to that argument, discussing the fact that it would combine Scott's "background and . . . upbringing, the chances [he'd] had in life, [his] education or lack of education, and [his] criminal past" with "the crime that was committed" in fashioning a sentence. *Id.* at 3730. The court acknowledged Scott's "troubled past," but noted that Scott had an opportunity to put that past behind him while incarcerated so that he could start afresh. *Id.* at 3730-31.

True, the district court did not mention specifics about Scott's criminal past, childhood, or addiction. But it responded more specifically to Scott's arguments than did the *Vonner* district court, which simply told the defendant that it appreciated his apology, encouraged him to cooperate with the government, and advised him to use his time of incarceration to further his life skills and focus on a beneficial "lifestyle[]." 516 F.3d at 386. The district court in *Vonner* then stated that it had "considered the nature and circumstances of the offense, the history and characteristics of the defendant, and the advisory Guidelines range, as well as the other factors listed in 18 [U.S.C. §] 3553(a)." *Id.* (alteration in original). There, we held that Vonner had not shown that the district court "*plainly* violated its duty to analyze the relevant sentencing factors and his arguments for leniency," because the court "mentioned the § 3553(a) factors that were directly relevant to Vonner's pleas for leniency" and "showed that he understood" Vonner's "conceptually straightforward" arguments. *Id.* at 388 (citation modified). The same is true here, because the district court addressed Scott's background and troubled past. The district court therefore considered the arguments Scott presented for leniency and articulated a basis for its decision.

Scott relies upon our decision in *United States v. Thomas-Mathews*, 81 F.4th 530 (6th Cir. 2023), where we determined a sentence was procedurally unreasonable. In that case, the district court's § 3553(a) discussion considered only the defendant's criminal history and failed to address his "personal history and characteristics." *Thomas-Mathews*, 81 F.4th at 545. Thomas-Mathews

had highlighted his childhood, career, and familial and social relationships at sentencing, but the district court did not discuss those factors. *Id.* at 546. We noted that we have "vacated sentences even on plain error review if the district court is non-responsive to a non-frivolous argument at sentencing." *Id.* (citation modified). And in *Thomas-Mathews*, the district court was in fact "largely unresponsive" to the defendant's arguments, so we were left to guess whether the court had considered them. *Id.* In the present case, however, although the district court's explication of the § 3553(a) factors was short, the court explained that it *was* considering Scott's background, upbringing, opportunities in life, education, and criminal history. We therefore cannot say that the district court was "unresponsive" to Scott's argument for leniency. *See also United States v. Humphries*, No. 23-3411, 2024 WL 1134628, at *4 (6th Cir. Mar. 15, 2024) (distinguishing the *Thomas-Mathews* court's "fail[ure] to respond to many of the defendant's arguments" from "today's case, [in which] the district court's explanation, albeit terse, at last demonstrated some appreciation for [defendant's] mitigation arguments").

Scott also contends that the district court failed to consider the kinds of sentences available, the need for the sentence imposed to accomplish the goals set out in § 3553(a)(2), the need to avoid unwarranted sentencing disparities, or the nature and circumstances of the offense. *See* 18 U.S.C. § 3553(a)(1), (2), (3), and (6). But the district court stated that it was considering the "nature and circumstances of this offense" and "the crime that was committed." RE 546, Sent. Hr'g Tr., PageID 3730-31. It also took into account "the other [§] 3553 factors." *Id.* at PageID 3731. To the extent that the district court omitted a lengthy discussion of these factors, it "did address the major contentions made by [Scott] during his hearing," and "[a]ny omissions do not appear to have had an impact on the length or nature of [Scott's] sentence." *United States v. Verburg*, 588 F. App'x 434, 441 (6th Cir. 2014).

Although the discussion of these latter § 3553(a) factors was "cursory," the district court did not plainly err. *Id.* Indeed, we have affirmed on plain error review where sentencing judges have provided similarly terse explanations, so long as they have demonstrated that they have considered the arguments presented and articulated a reasoned basis for their decisions. *See, e.g.*, *United States v. Davy*, 713 F. App'x 439, 446-47 (6th Cir. 2017) (district court could have said more in its analysis of the § 3553(a) factors, but court's reasoning made clear that it had considered the defendant's arguments and the factors); *United States v. Stephens*, 393 F. App'x 340, 347-48 (6th Cir. 2010) (brevity of district court's analysis was "short of ideal," but did not overcome deference to court where court did not deviate from a legal rule or commit plain error (quoting *United States v. Simmons*, 587 F.3d 348, 359 (6th Cir. 2009)); *United States v. Lapsins*, 570 F.3d 758, 773-74 (6th Cir. 2009) (district court's "fairly terse" recitation of the § 3553(a) factors demonstrated "sufficiently detailed" reasoning to allow "meaningful appellate review" (quoting *United States v. Mayberry*, 540 F.3d 506, 518 (6th Cir. 2008)).

Scott finally argues that, even though U.S.S.G. §5G1.1(a) reduced his guidelines range to the statutory maximum of 240 months, the district court was still required to consider the § 3553(a) factors. He cites *United States v. Corsey*, 723 F.3d 366 (2d Cir. 2013), in which the Second Circuit vacated multiple defendants' sentences where the defendants were, like Scott, subject to the statutory maximum—and therefore, a reduced guidelines range—of 240 months. 723 F.3d at 375. The district court "seemed to assume that imposing a statutory maximum sentence reflected a per se reasonable sentence," simply because the defendants' "[g]uidelines ranges prior to the application of the section 5G1.1 limit soared past the statutory maximum." *Id.* The Second Circuit was therefore "not certain" that the district court had weighed the § 3553(a) factors, noting that a

lowered guidelines range pursuant to §5G1.1 "is still the recommendation and should be treated as a starting point in a deeper analysis." *Id.* at 375-76.

In this case, though, the district court explicitly acknowledged that the lowered guidelines range encompassing the statutory maximum was "merely advisory" and "not binding on the [c]ourt." RE 546, Sent. Hr'g Tr., PageID 3727. The court was aware that it "must consult the guidelines and . . . take them into account, as well as the sentencing factors listed in 18 U.S.C. [§] 3553, in arriving at an appropriate sentence." *Id.* *Corsey*, in addition to being non-binding on this court, is unlike the present case because the district court here "treated [the lowered range] as a starting point" for its analysis, not the inevitable end point. 723 F.3d at 376. For all these reasons, the district court did not plainly err in considering Scott's arguments and explaining the reasons for the sentence imposed.

**II.    The district court did not plainly err by ordering Scott's federal sentence to run consecutively to any potential state revocation sentence.**

Scott next argues that the district court erred in requiring that his sentence for the instant offense run consecutively to any sentence that might be imposed by a Georgia state court in connection with the revocation of his probation in Dade County. He contends that it was error to impose the consecutive-sentence requirement where (1) the guideline provision cited in the presentence report (U.S.S.G. §5G1.3(a)) did not apply to him; and (2) the district court failed to adequately explain why it was imposing consecutive sentences. Scott concedes that he failed to object to the consecutive-sentence issue at his sentencing hearing, and so we review for plain error. *See United States v. Potts*, 947 F.3d 357, 364 (6th Cir. 2020).

District courts "have discretion to select whether the sentences they impose will run concurrently or consecutively with respect to other sentences . . . that have been imposed in other proceedings, including state proceedings," including those proceedings "where a federal judge

anticipates a state sentence that has not yet been imposed." *Setser v. United States*, 566 U.S. 231, 236-37 (2012). Section 5G1.3 of the guidelines addresses undischarged terms of imprisonment. U.S.S.G. §5G1.3. In particular, §5G1.3(d) and its application note 4(C) together state that, where the undischarged sentence results from a state probation violation, "the Commission recommends that the sentence for the instant offense be imposed consecutively to the sentence imposed for the revocation." U.S.S.G. §5G1.3(d) & cmt. n.4(C).

Scott concedes that the district court's decision was discretionary, but nonetheless argues that the district court's decision to run his federal sentence consecutively to "any revocation sentence that might be imposed in [his] pending Dade County, Georgia" case was erroneous because the presentence report cited an inapplicable guideline provision for the district court's authority to do so. RE 546, Sent. Hr'g Tr., PageID 3731. The supposedly inapplicable provision in the presentence report was contained in a section captioned "Impact of USSG §5G1.3." RE 532, Presentence Rep., PageID 3606. This section read: "Pursuant to USSG §5G1.3(a), if the instant offense was committed while the defendant was serving a term of imprisonment . . . the sentence for the instant offense shall be imposed to run consecutively to the undischarged term of imprisonment." *Id.* Scott concedes that his federal drug-trafficking offense "was committed while [he] was serving a term of imprisonment" following his conviction in Whitfield County on unrelated state charges. But he argues that this guideline could not provide a basis for running his federal sentence consecutively to any sentence imposed in the *Dade* County case because he had no "undischarged term of imprisonment" in that case to which to run his federal sentence consecutively. Recall that Scott's sentence in the Whitfield County case had ended immediately before he was arrested on federal drug trafficking charges, and he was on active supervision in his

Dade County case, with only a warrant issued for violation of his probation in that case—but no revocation sentence had yet been imposed.

But, as the government points out and Scott concedes, the district court did not cite or expressly rely upon §5G1.3(a) at the sentencing hearing. Scott argues that the district court in effect did rely on that section because it acknowledged receiving the presentence report and commented that it found the report "correct factually." RE 546, Sent. Hr'g Tr., PageID 3726. We do not read that comment as expressing reliance on §5G1.3(a) simply because that section was reproduced in the presentence report. After all, the district court explained its independent duty to consult the guidelines in fashioning a sentence. And §5G1.3(d) and its application note 4(C) address undischarged sentences resulting from revocation of state probation. At bottom, Scott simply argues that the district court inadequately explained that it would not be relying on §5G1.3(a) in ordering his federal sentence to run consecutively to any Dade County sentence.

We have considered similar circumstances in other cases and concluded that the district court did not commit plain error. For example, in *United States v. Fox*, No. 20-6039, 2021 WL 3747190 (6th Cir. Aug. 25, 2021), where the defendant was on state parole when he committed federal drug-trafficking offenses, the district court recommended to the state parole commission "that the sentence run consecutively to any undischarged term of state imprisonment that *might* arise as a result of any parole violations." 2021 WL 3747190, at *1 (emphasis added). The defendant argued that he had not been charged with any state parole violations, so there was no "undischarged term of imprisonment" to which the district court could have run his federal sentence consecutively. *Id.* at *4. We rejected that argument, citing U.S.S.G. §5G1.3(d)'s application note. *Id.*

And we further endorsed the reasoning in *Fox* in *United States v. Mitchell*, 107 F.4th 534 (6th Cir. 2024), in which the defendant argued that the district court erred by ordering that his federal sentence run consecutively to any sentence resulting from "any state-court conviction or parole violation," because, at the time he was sentenced, there existed no pending state sentence or parole violation that could result in a sentence. 107 F.4th at 546. We noted that the defendant had been released from prison, but was still subject to a sentence "that could have resulted in his return to prison" had he violated the terms of his release. *Id.* The district court, therefore, did not plainly err in failing to identify a specific pending state sentence. *Id.* at 546-47; *see also Setser*, 566 U.S. at 236-37 (recognizing a district court's discretion to order that a federal sentence run consecutively to an anticipated state sentence "where a federal judge anticipates a state sentence that has not yet been imposed"); *United States v. Moore*, 512 F. App'x 590, 593-94 (6th Cir. 2013) (holding that district court did not err in ordering that a defendant's sentence run "partially consecutive to any yet-to-be-imposed state sentence on his parole violation"). So, too, in today's case.

Scott next argues that the district court did not adequately explain its decision to impose a consecutive sentence. In imposing a consecutive or concurrent sentence, a court "must consider the factors listed in . . . § 3553(a) . . . [and] should also consider the relevant Guidelines recommendations and policy statements." *Mitchell*, 107 F.4th at 547 (quoting *United States v. Berry*, 565 F.3d 332, 342 (6th Cir. 2009) (internal quotation marks omitted)). We have held that, when a district court considers the § 3553(a) factors in determining the sentence's length, "it need not conduct a separate § 3553(a) analysis when deciding whether to impose a consecutive sentence." *Id.* Here, as set forth above, the district court sufficiently addressed the § 3553(a) factors and was not required to repeat that analysis when it came to imposing a consecutive

sentence. It was required only to "make generally clear the rationale under which it has imposed the consecutive sentence." *Id.* (citation modified).

To that point, the district court acknowledged that the state revocation sentence may or may not occur, as evidenced by its reference to "*any* revocation sentence that *might* be imposed" in Scott's Dade County case. RE 546, Sent. Hr'g Tr., PageID 3731 (emphasis added). A district court does not plainly err when, in explaining a decision to impose a consecutive sentence, it acknowledges the "separate nature" of state and federal offenses, alongside the "indeterminate nature" of those offenses. *See Mitchell*, 107 F.4th at 547 (quoting *Berry*, 565 F.3d at 343). *Berry* also reasoned that a district court's understanding of these issues may be inferred from the presentence report, *see* 565 F.3d at 343, and here the presentence report detailed Scott's Dade County case history as well as §5G1.3. Overall, the district court understood its discretion, "considered the factors relevant to its discretion," and did not plainly err in imposing a consecutive sentence. *Id.* at 343; *see also Mitchell*, 107 F.4th at 547.

## CONCLUSION

For these reasons, we affirm the district court's judgment.