NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0597n.06

Case No. 25-3069

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Dec 26, 2025
KELLY L. STEPHENS, Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff-Appellee, | ) |
| | ) |
| | ) ON APPEAL FROM THE UNITED |
| v. | ) STATES DISTRICT COURT FOR |
| | ) THE NORTHERN DISTRICT OF |
| JUSTICE HUNTER, | ) OHIO |
| Defendant-Appellant. | ) |
| | ) OPINION |

Before: MOORE, THAPAR, and RITZ, Circuit Judges.

The court delivered a PER CURIAM opinion. THAPAR, J. (pp. 6–9), delivered a separate opinion concurring in the judgment only.

PER CURIAM. In 2022, Justice Hunter pled guilty to conspiracy and possession charges that arose out of a massive drug-trafficking conspiracy. Only two months into his term of supervised release, Hunter committed more drug-trafficking and possession offenses. So the district court revoked his supervised release and sentenced him to 24 months in prison. Hunter appeals that sentence. The district court didn't plainly err, so we affirm.

I.

Justice Hunter was part of a street gang called "Shorb Blocc" in Canton, Ohio. The gang sold narcotics, including cocaine, heroin, methamphetamine, and fentanyl. While law enforcement was investigating the gang, Hunter sold cocaine to a confidential informant. As a result, a grand jury indicted Hunter in 2021 along with 15 of his co-conspirators. Hunter pled guilty to

distributing a controlled substance and conspiring to possess cocaine, cocaine base, and fentanyl with the intent to distribute. The district court sentenced him to 24 months in prison, followed by three years of supervised release. The court also imposed conditions on Hunter's term of supervision, including prohibitions on committing any additional crimes, possessing and using controlled substances, and possessing firearms and ammunition.

Hunter's term of supervised release began on May 8, 2023. The next day, at his first drug test, he tested positive for four different controlled substances. Just two months later, police arrested him for possessing two handguns and ammunition that they discovered while executing a search warrant at his residence. Hunter also purchased fentanyl in three controlled buys. As a result, he pled guilty to four drug charges in state court. After probation reported his violations, Hunter appeared before the district court and admitted to violating the conditions of his supervised release.

The district court then held a revocation hearing. The Sentencing Guidelines recommended 30 to 37 months in prison, but the statutory maximum capped the term of imprisonment at 24 months. 18 U.S.C. § 3583(e)(3). The district court "considered the applicable sentencing factors" and "the nonbinding policy statements in Chapter 7 of the guidelines." R. 682, Pg. ID 4270. After discussing Hunter's background and violations, the district court revoked his supervised release, stating: "I don't know how we can impress upon you, Mr. Hunter, that you can't go back to selling drugs. . . . But, in this case, I am going to revoke your term of supervised release just because your immediately returning to criminal conduct was a serious breach of this Court's trust." *Id.* at 4275. The district court then imposed the statutory maximum of 24 months in prison.

After imposing Hunter's sentence, the district court asked for any objections. Hunter's counsel stated, "[W]e would just object to the sentence for the record." *Id.* at 4276. The district

court asked him to clarify the objection because it was so "general." *Id.* at 4277. In response, counsel objected that the term of imprisonment was "greater than necessary." *Id.* Hunter timely appealed.

II.

Hunter argues that the district court relied on an impermissible factor—breach of trust—in determining his term of imprisonment. He describes this as a substantive-reasonableness challenge. But considering an impermissible factor is a "procedural, not substantive, error." *United States v. Parrish*, 915 F.3d 1043, 1048 (6th Cir. 2019) (quotation omitted). So we treat his appeal as a procedural-reasonableness challenge.

Hunter's objection that the term of imprisonment was "greater than necessary considering all of the custody time" didn't preserve the procedural-reasonableness challenge he asserts on appeal. R. 682, Pg. ID 4277. To preserve an argument, a party must object in the district court on the same basis that he raises on appeal. *United States v. Sittenfeld*, 128 F.4th 752, 776 (6th Cir. 2025), *petition for cert. filed*, No. 25-49 (U.S. July 11, 2025). And an objection "to the Court's sentence in total . . . is a substantive reasonableness challenge, not a procedural one." *United States v. Erker*, 129 F.4th 966, 978 (6th Cir. 2025) (quotation omitted); *cf. Holguin-Hernandez v. United States*, 589 U.S. 169, 174–75 (2020) (treating an objection that a sentence is "greater than necessary" as a substantive-reasonableness challenge). Since Hunter's general objection at sentencing didn't mention breach of trust, he didn't preserve his argument for appeal.

Because Hunter failed to preserve his argument, we review for plain error. *Erker*, 129 F.4th at 978. "Under that extremely deferential standard, we reverse only in exceptional circumstances to correct obvious errors that would result in a miscarriage of justice." *United States v. Hymes*, 19 F.4th 928, 933 (6th Cir. 2021) (quotation omitted). To prevail, Hunter must "show

(1) error (2) that was obvious or clear, (3) that affected [the] defendant's substantial rights, and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc) (cleaned up).

The district court didn't plainly err by considering breach of trust in imposing Hunter's term of imprisonment because the error, if any, was not obvious or clear. We have long held that district courts "may sanction the 'breach of trust' associated with a violation." *United States v. Morris*, 71 F.4th 475, 482 (6th Cir. 2023) (citing *United States v. Johnson*, 640 F.3d 195, 204 (6th Cir. 2011)). Our published cases[1] permit district courts to consider breach of trust, so the district court didn't commit plain error by doing just that. *Id.*; *see also United States v. Jones*, 81 F.4th 591, 602 n.7 (6th Cir. 2023), *abrogated on alternative grounds by, Esteras v. United States*, 606 U.S. 185 (2025).

What's more, in 2019, a majority of the Supreme Court suggested that revocation sentences are "first and foremost considered sanctions for the defendant's breach of trust—his failure to follow the court-imposed conditions that followed his initial conviction." *United States v. Haymond*, 588 U.S. 634, 658 (2019) (Breyer, J., concurring in the judgment) (cleaned up); *see id.* at 670–71 (Alito, J., dissenting, joined by Roberts, C.J., Thomas & Kavanaugh, JJ.) ("[T]he violative act is a breach of trust.").

The Supreme Court's recent decision in *Esteras v. United States* doesn't undermine that conclusion. *See* 606 U.S. 185. *Esteras* held that district courts can't consider retribution, which is the purpose of the sentencing factors articulated in § 3553(a)(2)(A)—the seriousness of the

---

[1] And that's not to mention the scores of unpublished cases doing the same. *See, e.g.*, *United States v. Blackman*, No. 24-5517, 2025 WL 1262322, at *3 (6th Cir. May 1, 2025), *abrogated on alternative grounds by, Esteras v. United States*, 606 U.S. 185 (2025); *United States v. Byrd*, 843 F. App'x 751, 759 (6th Cir. 2021); *United States v. Eubanks*, 516 F. App'x 576, 578–79 (6th Cir. 2013).

offense, promoting respect for the law, and providing just punishment—when deciding whether to revoke supervised release. *Id.* at 195. But *Esteras* explicitly reserved the question of "whether [sanctioning an offender's breach of trust] is a permissible consideration." *Id.* at 194 n.5. So, as we've noted elsewhere, *Esteras* doesn't abrogate our precedent allowing district courts to consider and sanction a defendant's breach of trust. *United States v. Hoyle*, 148 F.4th 396, 406 & n.1 (6th Cir. 2025). And some of our sister circuits have also continued, after *Esteras*, to treat sanctioning an offender's breach of trust as permissible in the revocation context. *See, e.g.*, *United States v. Fernandez*, 152 F.4th 124, 132 (2d Cir. 2025); *United States v. Walton*, 145 F.4th 476, 491 (4th Cir. 2025); *United States v. Taylor*, 153 F.4th 934, 943 (9th Cir. 2025). Thus, *Esteras* doesn't control the outcome of this case, and our precedent allows district courts to consider breach of trust.

Our caselaw allowing district courts to consider breach of trust mirrors the Sentencing Commission's approach. The Commission has adopted the view that "a defendant's failure to follow the court-imposed conditions of . . . supervised release" is a "breach of trust." U.S. Sent'g Guidelines Manual ch. 7, pt. A, introductory cmt. 3(b) (U.S. Sent'g Comm'n 2025). As a result, "at revocation[,] the court should sanction primarily the defendant's breach of trust." *Id.* Hunter argues that the Commission has abandoned this approach. But its recent amendments do no such thing. Rather, the Commission has maintained its position that revocation sanctions the defendant's breach of trust. *See id.*

\* \* \*

By considering Hunter's breach of the court's trust, the district court didn't plainly err. We affirm.

THAPAR, Circuit Judge, concurring in the judgment. I agree with the majority that the district court didn't plainly err. In fact, it didn't err at all. I write separately to explain why *Esteras* doesn't change our longstanding view that district courts may consider a defendant's breach of trust during a revocation hearing.

As the majority notes, the Supreme Court explicitly reserved this question in *Esteras v. United States*. 606 U.S. 185, 194 n.5 (2025). So the Court's last word on the topic was *United States v. Haymond*, 588 U.S. 634 (2019). And under the *Marks* rule, Justice Breyer's opinion—concurring on the narrowest grounds and endorsing the breach-of-trust approach—binds us. *See Marks v. United States*, 430 U.S. 188, 193 (1977); *Haymond*, 588 U.S. at 658 (Breyer, J., concurring). Four other Justices agreed with him. *See id.* at 671 (Alito, J., dissenting, joined by Roberts, C.J., Thomas & Kavanaugh, JJ.) ("[T]he violative act is a breach of trust.").

*Esteras* casts no doubt on *Haymond*, or on our precedent authorizing district courts to consider breach of trust. The *Esteras* Court concluded that district courts can't consider the § 3553(a)(2)(A) factors because they aim to punish the original offense, and retribution for the original offense is an impermissible purpose at revocation. 606 U.S. at 194–96. But considering the defendant's breach of trust isn't retributive. That's because breach of trust speaks to the ongoing relationship between the defendant and the district court: a forward-looking relationship that's focused on helping him reintegrate into society. As a result, unlike the § 3553(a)(2)(A) factors, breach of trust doesn't reflect "the *backward-looking* purpose of retribution." *Esteras*, 606 U.S. at 196 (emphasis in original). So *Esteras* doesn't bar district courts from considering it.

Hunter argues that breach of trust isn't among the factors that § 3583(e)(3) lets district courts consider in revoking supervised release. That's wrong. The supervised-release statute permits courts to consider, among other factors, the defendant's history and characteristics,

deterrence of future criminal conduct, and the need to protect the public from the defendant. *See* 18 U.S.C. § 3583(e); *id.* § 3553(a)(1), (a)(2)(B)–(C). A defendant's breach of trust speaks to those factors. We have long treated breach of trust as part of the defendant's history and characteristics. *United States v. Johnson*, 640 F.3d 195, 207 (6th Cir. 2011). Additionally, a defendant's breach of trust by returning to illegal conduct shows a need to deter him from that conduct and protect the public from his continuing crimes. *See United States v. Blackman*, No. 24-5517, 2025 WL 1262322, at *3 (6th Cir. May 1, 2025). That was precisely the case here: The district court noted that "upon release," Hunter "essentially immediately went back to the behavior that got [him] placed in prison." R. 682, Pg. ID 4274. In short, multiple factors that district courts may consider under § 3583(e) encompass the defendant's breach of trust.

Hunter also argues that supervised release "does not bestow any trust on a defendant," so "a violation therefore does not breach any trust." Appellant's Br. at 9. He reasons that the parole system historically allowed judges to terminate a defendant's prison sentence "and afford him a period of conditional liberty as an 'act of grace,' subject to revocation." *Haymond*, 588 U.S. at 643 (plurality opinion) (quotation omitted). But because modern federal sentencing reforms rejected elements of that trust-based parole model, Hunter contends that supervised release no longer involves any trust that he could breach.

Not so. Since supervised release also grants the defendant conditional freedom, it incorporates the trust-based elements of the historic parole system. The Supreme Court has used the same "conditional liberty" framework to describe supervised release as "a form of postconfinement monitoring that permits a defendant a kind of conditional liberty by allowing him to serve part of his sentence outside of prison." *Mont v. United States*, 587 U.S. 514, 523 (2019) (cleaned up); *see also Esteras*, 606 U.S. at 192. Like parole, supervised release is also subject to

discretionary revocation. 18 U.S.C. § 3583(e)(3). Admittedly, Hunter is correct that supervised release differs from parole because "unlike parole, supervised release wasn't introduced to replace a portion of the defendant's prison term." *Haymond*, 588 U.S. at 652 (plurality opinion) (cleaned up). But that distinction doesn't carry the heavy weight Hunter places on it. Because supervised release still involves conditional liberty, like parole, it also implicates a breach of trust.

The Sentencing Commission has persuasively embraced this approach.[1] It has long taken the position that "a defendant's failure to follow the court-imposed conditions of . . . supervised release" is a "breach of trust." U.S.S.G. ch. 7, pt. A(3)(b). As a result, "at revocation[,] the court should sanction primarily the defendant's breach of trust." *Id.* And its recent amendments don't change course. The Commission merely added a single word—"initially"—that casts no doubt on the breach-of-trust position it "adopted." *See* U.S. Sent'g Comm'n, *Amendments to the Sentencing Guidelines*, at 58–59 (2025).

Finally, as any sentencing judge knows, trust is an important part of supervised release. Congress created supervised release "to assist individuals in their transition to community life." *United States v. Johnson*, 529 U.S. 53, 59 (2000). District judges take that responsibility seriously, and many take the time to meet with their supervisees regularly. The court's probation officers do

---

[1] Although § 3583(e) directs district courts to consider the Commission's "applicable guidelines or policy statements," 18 U.S.C. § 3553(a)(4)(B), the introductory commentary about breach of trust is neither. *See United States v. Havis*, 927 F.3d 382, 386 (6th Cir. 2019) (en banc) (per curiam) ("[C]ommentary has no independent legal force—it serves only to *interpret* the Guidelines' text, not to replace or modify it." (emphasis in original)). We don't reflexively defer to the commentary. In fact, the Supreme Court's recent decision in *Loper Bright Enterprises v. Raimondo* casts doubt upon whether courts *can* defer to an agency's interpretation of its own legislative rules. 603 U.S. 369, 412–13 (2024); *see also United States v. Bricker*, 135 F.4th 427, 439–41 (6th Cir. 2025). It stands to reason that if we must exercise "independent judgment" when interpreting statutes, we must do the same for legislative rules. *Loper Bright*, 603 U.S. at 394.

Exercising that judgment, I find the commentary reasonably persuasive in this case. *See id.* at 402 (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). For one, it doesn't contradict the text of any guideline or statute. *See Havis*, 927 F.3d at 386. And the commentary has remained the same since it was written just a few years after Congress passed the statute at issue, making it both "contemporaneous[]" and "consistent over time." *Loper Bright*, 603 U.S. at 394; *see also* Pub. L. No. 98-473, §§ 211–212, 98 Stat. 1837, 1987–2011 (1984); U.S.S.G. ch. 7, pt. A(3)(b) (1990).

the same.  As the relationship builds between the court and the defendant, so does the level of trust.

So when a defendant violates his conditions of supervision, he breaches that trust.  To say district

courts can't consider that breach when they sentence a defendant would be absurd.

*      *      *

The district court didn't err by considering Hunter's breach of the court's trust.  I would

affirm for that reason.